UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-627-MOC-DCK

| | |
|---|---|
| MIRANDA MALIK, ) | |
| ) | |
| Plaintiff, pro se, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| AMAZON.COM PRICES, LLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment. (Doc. Nos. 45, 65).

### I. BACKGROUND

#### A. Procedural Background

Plaintiff filed this action against her former employer Defendant Amazon.com Prices, LLC ("Amazon" or "Defendant") on November 22, 2021, after her employment was terminated. (Doc. No. 1). Plaintiff filed an Amended Complaint on February 8, 2022. (Doc. No. 13). Defendant filed the pending summary judgment motion on April 3, 2023. (Doc. No. 45). Plaintiff filed her own summary judgment motion on July 10, 2023. (Doc. No. 65). The Court held a hearing on the summary judgment motions on October 23, 2023. This matter is now ripe for disposition.

#### B. Factual Background

Defendant Amazon hired Plaintiff as a Seasonal Fulfillment Associate for the CLT4 location in Charlotte, North Carolina on April 19, 2020. (Def. Ex. A). Subsequently, Amazon

1

hired Plaintiff as a Full-time Fulfillment Associate at the CLT4 location in Charlotte, effective August 2, 2020. (Def. Ex. B). When hired, Plaintiff was provided with Amazon's policies and procedures. (Def. Ex. C, D; Pl.'s Dep., 55:18–25, 106:15–25). Relevant here, Amazon's manual includes an Attendance and Punctuality policy, stating: "[i]f you are going to be absent or late to work, we expect to hear from you before the start of your workday. Please be aware that unsatisfactory attendance may be a basis for disciplinary action, up to and including dismissal." (Id. at 154). The manual further states: "[i]f you are unable to meet attendance requirements due to medical, family, or personal reasons, contact the Employee Resource Center and/or review information on Inside Amazon to determine whether you might qualify for leave of absence or accommodation. If an associate has not reported to work or called in for three (3) consecutive workdays, in most cases the company will consider the associate to have resigned, and employment will be terminated." (Id.). Additionally, Amazon's Leaves of Absence policy states, "[a]n eligible employee must work with Disability and Leave Services (DLS) to notify the Company of their need for an approved Leave of Absence (LOA) and complete an application for a LOA." (Id. at 161). Finally, Amazon's Employees with Disabilities policy states that "[e]mployees may initiate an accommodation request online or by phone. . . . DLS typically requires medical certification to verify the existence of a disability and functional limitations caused by the disability, to identify potential reasonable accommodations, and/or to assess any safety or health risks that may impact your ability to safely perform your job, with or without reasonable accommodation." (Id. at 166).

On August 21, 2020, Plaintiff hit her head on a video monitor at work. (Def. Ex. F). Amazon's on-site medical team ("AMCARE") treated Plaintiff with over-the-counter medication and ice. (Def. Ex. F; Ex. G, at 28-29). AMCARE staff determined that Plaintiff was able to

2

Case 3:21-cv-00627-MOC-DCK   Document 72   Filed 01/12/24   Page 2 of 19

return to work because she was oriented, alert, and could see well out of both eyes. (Def. Ex. G at 28–29).

Sometime between August 21, 2020 and August 27, 2020, Plaintiff filed a complaint with the North Carolina Department of Labor, Occupational Safety and Health Division ("NC DOL OSH"), alleging health and/or safety hazards at Amazon's facility. (Def. Ex. T). By letter dated August 27, 2020, NC DOL OSH notified Defendant it had received a complaint about health and/or safety hazards at Amazon's facility. See (Def. Ex. T). That letter did not identify the name of the Complainant. (Id.). By letter dated August 27, 2020, NC DOL OSH notified Plaintiff that NC DOL OSH had requested Defendant to take corrective action to remove the safety hazards. See (Def. Ex. U). On September 9, 2020, the NC DOL OSH sent Plaintiff a letter, stating, "the case can be closed on the grounds that the hazardous conditions have been corrected (or no longer exist)." (Def. Ex. V).

Plaintiff missed work on August 22, 26, 27, 28, and 29. (Def. Ex. G at 25–28; Def. Ex. D at 102:21-24). On August 27, 2020, Workers' Compensation Manager Ben Woods spoke with Plaintiff via telephone and advised her to return to the site to complete the workers' compensation claims process. (Def. Ex. H). Plaintiff did not report to Amazon to complete the workers' compensation paperwork because, she claims, she was unable to drive. (Id.). Plaintiff further suggested that her doctor had taken her out of work for a week due to concussion symptoms. (Def. Ex. I). Plaintiff did not provide a doctor's note or any other medical documentation to support her claim. (Def. Ex. I, J). Woods informed Plaintiff that any missed time on or after August 27, 2020, would not be covered by workers' compensation leave and that Plaintiff would need to arrange for personal leave or unpaid time off. (Def. Ex. H).

Plaintiff never contacted Defendant to arrange for her absences to be covered as personal

leave or unpaid time off as part of a leave of absence as required by company policy. (Def. Ex. D, at 98:4–13). On August 30, 2020, at 11:20 a.m. Plaintiff left herself a note providing: (1) an Amazon telephone number; (2) "mailbox was full"; and (3) "[p]oint system. 3 days time off or termination." (Def. Ex. K). On August 31, 2020, Plaintiff came to the facility to complete the workers' compensation paperwork. (Def. Ex. L; Def. Ex. D, at 81:24–82:11, 83:19–85:13). She received more direct instruction, as the Authorization for Initial Medical Evaluation form stated that "[i]f the doctor releases you to return to work, with or without restrictions, you should return to work to discuss next steps. If the doctor determines you are unable to work, you should go home and immediately contact your WC Manager and the Amazon Leave of Absence team." (Def. Ex. L at 33).

The next day, September 1, 2020, Plaintiff saw an approved physician, who cleared her to work starting September 2, 2020, with no restrictions. (Def. Ex. M). Subsequently, Plaintiff treated with her primary care physician who told her to return to work on September 7, 2020. (Def. Ex. N). Defendant maintains that it did not receive this doctor's note from Plaintiff during her employment, but instead during discovery. After being cleared by the Amazon approved physician, Plaintiff did not provide Defendant her primary care physician's note, or any other medical documentation, to challenge her return-to-work status. (Def. Ex. M at 70).

On September 1, 2020, Defendant informed Plaintiff that she had missed two shifts and was at risk of termination due to job abandonment. (Def. Ex. O, P). Despite receiving job abandonment warnings, Plaintiff did not report to her shifts on September 3, 4, or 5. (Def. Ex. D at 87:16–22; Def. Ex. O, P). On September 5, Plaintiff received another message notifying her that she missed two shifts and was at risk of termination for job abandonment. (Def. Ex. O, P).

On September 7, after failing again to report to work, Plaintiff received a notice of

4

termination for job abandonment. (Def. Ex. Q). On September 9, Plaintiff emailed Amazon's "AskHR" email address asking why she was denied workers' compensation and terminated. (Def. Ex. P). Amazon reiterated that she was terminated for violating the Company's attendance policy. (Id.).

Plaintiff subsequently filed this action. Plaintiff's Amended Complaint alleges discrimination and retaliation based on sex under Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and disability discrimination and retaliation under the Americans with Disability Act ("ADA"). Plaintiff also sues for a violation of the Retaliatory Employment Discrimination Act, N.C. GEN. STAT. § 95-240 et seq. ("REDA") and for violations of public policy under N.C. GEN. STAT. § 143-422.1 et seq., N.C. GEN. STAT. § 95-126 et seq., and N.C. GEN. STAT. § 95-421 et seq.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is

---

[1] As Defendant correctly notes, Plaintiff's Amended Complaint does not include a Title VII claim based on a hostile work environment. In any event, Plaintiff has not presented any evidence amounting to a hostile work environment.

no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must show specific, material facts that give rise to a genuine dispute. Id. Under this standard, a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of its claim.

### III. DISCUSSION

**A. Plaintiff's Title VII Sex Discrimination and Retaliation Claims**

To survive a motion for summary judgment on a Title VII disparate treatment claim,

Plaintiff must state a prima facie case of sex discrimination under the mixed-motive framework or the McDonnell Douglas burden-shifting framework." Rodgers v. Eagle All., 586 F. Supp. 3d 398, 433 (D. Md. 2022) (quoting Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 649 (4th Cir. 2021)). Plaintiff fails to offer any direct evidence of discrimination that permits a mixed motive analysis. See Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 649 (4th Cir. 2021). Thus, the Court analyzes Plaintiff's complaint under the McDonnell Douglas framework.

To establish a prima facie case of sex discrimination under the McDonnell Douglas framework, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations; and (4) "the adverse employment action occurred under circumstances raising an inference of unlawful discrimination." Webster v. Rumsfeld, 156 F. App'x 571, 578 (4th Cir. 2005). "If a plaintiff establishes a prima facie case of unlawful discrimination, 'a presumption of illegal discrimination arises, and the burden of production shifts to the employer' to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action." Rodgers, 586 F. Supp. at 434 (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011)). But "[i]f the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." Id. (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981)). It then becomes the plaintiff's duty to "prove, by a preponderance of evidence, 'that the [employer's] proffered reason was not the true reason for the employment decision' and that the plaintiff 'has been the victim of intentional discrimination.'" Id. at 435 (quoting Burdine, 450 U.S. at 256).

To support her Title VII claim, Plaintiff alleges that certain males and females were treated more favorably at work. (Def. Ex. D at 141:13–143:2, 145:5–18; Def. Ex. R). She states

7

that she believed her supervisor Ashley, a female, was jealous of her and had a "vendetta" against her, but she acknowledges that she did not know why she was treated "less favorably" and did not understand why Ashley did not like her. (Def. Ex. D, at 150:11–14, 151:1–152:25, 184:11–18; Def. Ex. R at 02; Def. Ex. S at 08). Plaintiff alleges that employees, both male and female, laughed at a sign held by a male co-worker, identified as "Doe" that read "free breast exam" without any reference to, or implication of, Plaintiff. (Def. Ex. D, at 173:4–22; Ex. R, at 02). Plaintiff testified that Doe told her he wanted to take her around every room of his house, but she did not think he was making a sexual comment until her co-worker informed her it meant he wanted to have sex with her. (Def. Ex. D at 194:1–195:7). On July 19, 2020, Plaintiff filed a complaint though Defendant's "Ethics Hotline," in which she complained about various conduct at work, including the statement about the "breast exam." Plaintiff's July 19, 2020, Ethics Hotline Complaint was assigned to an internal investigator. (Def. Ex. R at 01).

Plaintiff offers no evidence supporting her assertion that she was terminated because of her sex.[2] Specifically, Plaintiff's position relies on her unsupported belief regarding her supervisor Ashley's alleged unfair treatment and Doe's alleged sexual advances. Coleman v. United States, 369 Fed. Appx. 459, 461 (4th Cir. 2010) ("The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.") (internal citations omitted). Plaintiff has provided no evidence that connects or suggests that her supervisor Ashley's alleged feelings towards her were because of her sex, or

---

[2] Plaintiff alleges she suffered numerous adverse employment actions. (See Doc. No. 13 ¶ 62). However, the only valid adverse employment action she alleges is termination. See Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'") (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).

that Ashley or John Doe played any role in her termination. Neither Ashley nor John Doe were involved in the decision to terminate Plaintiff or involved in any of the events culminating with her job abandonment. Plaintiff essentially asks this Court to infer that after employing her twice, knowing her gender, Amazon then terminated her within months because of her gender. To the contrary, where an employer or business hires and fires an employee and a plaintiff relies solely on conjecture and opinions, a "strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991). Plaintiff cannot establish even an inference that sex discrimination played a role in her treatment.

Even assuming that Plaintiff established a prima facie case of gender-based discrimination, Defendant has provided a legitimate, non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff has not shown that Defendant's proffered reason was pretextual. See Spencer v. Virginia State Univ., 919 F.3d 199, 208 (4th Cir. 2019), as amended (Mar. 26, 2019). If the burden had shifted, Defendant easily met it by explaining that Plaintiff's employment was terminated for violating the attendance policy. (Def. Ex. E, at 154; Def. Ex. P, Ex. Q). Plaintiff does not dispute that she missed three consecutive days of work. (Def. Ex. D, at 140:11–14). Courts routinely recognize violation of company policy as a legitimate non-discriminatory reason for termination. See Farrar v. Dorothea Dix Hosp., 829 F. Supp. 140, 143–44 (E.D.N.C. 1993). The Fourth Circuit makes clear that federal courts "do not sit as a kind of super-personnel department weighing the prudence of employment decisions." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 305 (4th Cir. 2016) (quotations omitted); see also Cross v. Bally's Health & Tennis Corp., 945 F. Supp. 883, 887 (D. Md. 1996) ("[Plaintiff] was terminated because he had accumulated four occurrences under its attendance policy.").

9

Plaintiff knew about the attendance and LOA policies and received warnings regarding the consequences of not returning to work or communicating with DLS to request a leave of absence. (Def. Ex. C, K, O, P). Plaintiff provides no evidence suggesting that Defendant's proffered reason for terminating her employment was pretextual. Plaintiff's own deposition testimony offers only unsupported statements attempting to discredit and undermine Defendant's attendance policy and LOA procedures. For these reasons, Plaintiff's Title VII sex discrimination claim fails.

Plaintiff also alleges that Defendant retaliated against her for making complaints to Defendant's ethics line regarding her supervisor Ashley and co-worker John Doe. (Def. Ex. D at 112:4–8; 117: 21–118:2; 129:3–19). A plaintiff can prove retaliatory intent through either direct evidence or the McDonnell Douglas framework. Rodgers, 586 F. Supp. 3d at 445 (citing Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018). "To state a prima facie claim of retaliation, a plaintiff must establish 'that (1) the plaintiff engaged in a protected activity . . . ; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'" Id. (quoting Okoli v. City of Baltimore, 648 F.3d 216, 223 (4th Cir. 2011)).

"[Plaintiff] must establish causation at two different stages of the McDonnell Douglas framework: first, in making a prima facie case, and second, in proving pretext and satisfying her ultimate burden of persuasion." Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). Here, even assuming Plaintiff states a prima facie claim of retaliation, Amazon has provided a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination—her continued absences from work in clear violation of Defendant's attendance policies. Plaintiff has failed to present any evidence showing that Defendant's proffered reason for termination was

pretextual. Plaintiff herself admits that she received messages that warned her of impending termination for her repeated absences. (Def. Ex. O; Def. Ex. P). Further, the decision-makers on Plaintiff's termination for job abandonment had no input or involvement in Plaintiff's sex harassment claim. Defendant is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

### B. Plaintiff's ADA Disability Discrimination and Retaliation Claims

"An individual is 'disabled' if she '(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a record of such an impairment; or (C) [has been] regarded as having such an impairment.'" Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 (4th Cir. 2004) (quoting 42 U.S.C. § 12102(2)). It is Plaintiff's burden to establish that she is disabled or was perceived as disabled. Id. Plaintiff has not met her burden. First, Plaintiff has established substantial curtailment of a major life activity. See 42 U.S.C. § 12102(2)(A). Plaintiff has not even identified a major life activity that could have been curtailed. Plaintiff has also provided no evidence that her concussion was "sufficiently severe" to overcome its short duration. Summers v. Altarum Inst. Corp., 740 F.3d 325, 329 (4th Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app)). Rather, Plaintiff was diagnosed with a concussion on August 23. (Def. Ex. J at 110). She was then released back to work, with no restrictions by the Amazon-approved physician on September 2 and by her own physician on September 7. (Def. Ex. M, at 70; Def. Ex. N). Ultimately, the evidence shows that Plaintiff suffered a minor concussion that did not substantially limit any life activities and that was not sufficiently severe to negate its transitory nature.

Plaintiff also has not shown that Defendant perceived her as having a disability. An individual is 'regarded as' disabled where: (1) she is actually impaired and such impairment is

11

known to her employer or (2) her employer perceives her to be impaired. Id. at 772. "[T]he 'regarded as' definition does not apply to minor or transitory impairments (i.e., 'with an actual or expected duration of 6 months or less')." Smith v. Charter Commc'ns, Inc., No. 3:18-CV-80-MOC-DSC, 2020 WL 3606391, at *6 (W.D.N.C. July 2, 2020) (quoting 42 U.S.C. § 12102(3)).

Here, Plaintiff was diagnosed with a minor concussion that—Plaintiff acknowledges—would have allowed her to return to work within 19 days. See (Def. Ex. F; Def. Ex. M at 70; Def. Ex. N). Her injury was thus minor and transitory. See Smith, 2020 WL 3606391, at *7 ("Moreover, "[b]y definition, a condition requiring only a one-month leave is a transitory impairment that precludes Plaintiff from proving he was regarded as having a disability.") (referencing 42 U.S.C. § 12102(3)(B)). Plaintiff presents no evidence to show that Defendant perceived Plaintiff to be impaired. While it is not Defendant's burden to prove the absence of a perception of disability, Defendant's lack of knowledge and perception is reflected in its repeated efforts to get Plaintiff to either return to work or properly request a leave of absence. Amazon's "repeated and strenuous efforts to secure [the plaintiff's] return to work cause[s] [the plaintiff's] claim that [the employer] regarded [her] as disabled in the major life activity of working to 'fly in the face of common sense.'" Smith, 2020 WL 3606391, at *7. Further, "[p]laintiff has presented no evidence establishing that [defendant] believed, mistakenly or otherwise, that Plaintiff had a physical or mental impairment that was not minor or transitory." Id. Even if Plaintiff could show that she had a disability under the ADA, Amazon has provided a legitimate, nondiscriminatory, non-retaliatory reason for Plaintiff's termination that she cannot prove was pretextual. See Watson v. Fairfax Cnty., Va., 297 F. Supp. 3d 591, 608 (E.D. Va. 2018) (finding that defendant terminated plaintiff for excessive absences, and plaintiff could not establish that reason is pretext for retaliation). In sum, Defendant is entitled to summary judgment on

12

Plaintiff's ADA discrimination claim.

Plaintiff also alleges that Defendant terminated her employment in retaliation for requesting a medical leave of absence. To establish a prima facie case of retaliation, Plaintiff must prove that: (1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected conduct and the adverse action. Laird v. Fairfax Cnty., 978 F.3d 887, 893 (4th Cir. 2020). For a claim of ADA disability discrimination or disability retaliation, if the plaintiff establishes a prima facie case, the McDonnell-Douglas burden shifting framework is then applied. See Perry v. Computer Scis. Corp., 429 F. App'x 218, 219–20 (4th Cir. 2011). Plaintiff's claim fails because she cannot establish that: (1) she participated in a protected activity; (2) her termination was casually connected to a protected activity; and (3) Defendant's legitimate, nondiscriminatory, non-retaliatory reason for terminating her employment was pretextual.

Here, Plaintiff's contention that she engaged in statutorily protected activity because she requested a medical leave of absence as a reasonable accommodation is meritless. Under the ADA, "[Plaintiff] must have engaged in a statutorily protected activity—in other words, [she] must have asserted [her] rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to [her] disability." McCormack v. Blue Ridge Behav. Healthcare, 523 F. Supp. 3d 841, 858 (W.D. Va. 2021), aff'd sub nom. McCormack v. Blue Ridge Behav. Healthcare, Inc., No. 21-1447, 2022 WL 16630565 (4th Cir. Nov. 2, 2022) (quotations omitted). Assuming arguendo that applying for a short leave of absence qualifies as participating in a protected activity, Plaintiff's claim fails because she never actually requested a leave of absence, as required, despite being aware of Defendant's policy. (Def. Ex. D, at 98:4–13, 99:3–22; Def. Ex. E, at 161). Ultimately, given Plaintiff's testimony regarding the reason for her termination,

13

and the evidence that shows she never requested a medical leave of absence, Plaintiff's disability retaliation claim fails. (Def. Ex. D, at 98:4–13, 99:3–22; Def. Ex. E, at 161; Def. Ex. Q).

Even if Plaintiff could establish a prima facie case of retaliation, Defendant has provided a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination that she cannot establish was pretextual. Defendant is entitled to summary judgment on this claim.

### C. Plaintiff's REDA Claim

Plaintiff's REDA claims are based on her allegation that she was terminated and denied workers' compensation for engaging in the protected activity of complaining of and reporting workplace safety issues. (Def. Ex. D, at 108:14–109:3, 112:4–8; 115:6–12, 117:21–118:2). "REDA prohibits any retaliatory discrimination against an employee who files a complaint or initiates an inquiry under certain North Carolina statutes, including the "[OSHANC"], N.C. Gen. Stat. § 95–126 et seq." Brown v. Sears Auto. Ctr., 222 F. Supp. 2d 757, 762 (M.D.N.C.), aff'd, 51 F. App'x 427 (4th Cir. 2002). "To state a claim under REDA, a plaintiff must show that (1) he exercised his right to engage in a protected activity, such as filing a workers' compensation claim; (2) he suffered an adverse employment action, and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action." Smith v. Computer Task Grp., Inc., 568 F. Supp. 2d 603, 613 (M.D.N.C. 2008) (referencing Wiley v. United Parcel Serv., Inc., 164 N.C. App. 183, 186 (2004)). If a plaintiff proves a prima facie case, "the burden shifts to the defendant to show . . . that it 'would have taken the same unfavorable action in the absence of the protected activity of the employee.'" Id. (quoting N.C. GEN. STAT. § 95–241(b)). "[T]he causal nexus between protected activity and retaliatory discharge must be something more than speculation." Id. (quoting Swain v. Elfland, 145 N.C. App. 383, 387 (2001)). In fact, "a plaintiff must demonstrate that retaliatory motive was a substantial factor in the adverse employment

14

actions taken by the defendant." Brown, 222 F. Supp. 2d at 762 (quotations omitted).

Plaintiff alleges that she was discharged in retaliation for filing an Occupational Safety and Health Act of North Carolina ("OSHANC") complaint against Defendant and for pursuing a claim under the North Carolina Workers' Compensation Act. (Def. Ex. D, at 117:21–118:2; Def. Ex. T; Def. Ex. U; Def. Ex. V). Even assuming Plaintiff could establish a prima face case, Defendant has shown that it would have terminated Plaintiff's employment for abandoning her job even in the absence of her OSHANC complaint and/or her reporting her alleged work-related injury under the NC Workers' Compensation Act. See Wilkerson v. Pilkington N. Am., Inc., 211 F. Supp. 2d 700, 710 (M.D.N.C. 2002) ("Policies allowing for the termination of an employee after being absent for a specified period of time have been upheld as a legitimate reason for terminating an employee under the REDA context."); accord Brown, 222 F. Supp. at 765 (where plaintiff was cleared to return to work, it was the plaintiff's duty to either timely return to work as instructed or properly submit additional medical information that would allow for absences to be excused and/or for a leave of absence to commence). Defendant is entitled to summary judgment on this claim.

**D. Plaintiff's Claim for Wrongful Discharge in Violation of Public Policy**

"Under clearly established North Carolina law, unless an employment contract expressly states a specific term, employment is terminable at the will of either party." Bradley v. CMI Indus., Inc., 17 F. Supp. 2d 491, 498 (W.D.N.C. 1998). "An employer wrongfully discharges an at-will employee if the termination is done for 'an unlawful reason or purpose that contravenes public policy.'" Ramos v. Carolina Motor Club, Inc., No. 317cv212, 2018 WL 3040028, at *10 (W.D.N.C. June 19, 2018) (quoting Bigelow v. Town of Chapel Hill, 227 N.C. App. 1 (N.C. Ct. App. 2013)); see also Bradley v. CMI Indus., Inc., 17 F. Supp. 2d 491, 498 (W.D.N.C. 1998).

15

"The Fourth Circuit and the North Carolina Court of Appeals have adopted narrow interpretations of the public policy exception to at-will employment." Ramos, 2018 WL 3040028, at *11. A plaintiff seeking to assert such a wrongful discharge claim is required to point to conduct by a defendant 'that violated a specific expression of North Carolina public policy.'"[3] Shook v. NCG Acquisition, LLC, No. 1:22cv65, 2022 WL 18893035, at *4 (W.D.N.C. Dec. 7, 2022) (quoting Considine v. Compass Group USA, Inc., 145 N.C. App. 314, 321–22, aff'd, 354 N.C. 568 (2001)).

### i. Public Policy Violation of the North Carolina Equal Employment Act ("NCEEPA").

"Courts have interpreted [the NCEEPA] policy to allow a plaintiff to bring a claim for wrongful discharge where the plaintiff contends that he or she has been discharged on account of . . . sex, or handicap." Shook, 2022 WL 18893035, at *6. However, "[c]ourts have also reasoned . . . that the public policy expressed in the NCEEPA does not prohibit alleged retaliation for reporting or opposing discriminatory conduct." Id. Moreover, federal courts are not "inclined to further expand the public policy exception." Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 688 (M.D.N.C. 1997). "[T]he North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143–422.2 insofar as they do not conflict with North Carolina statutes and case law." Hughes v. Bedsole, 48 F.3d 1376,

---

[3] "While no North Carolina court has expressly identified the essential elements (at least in list form) for such a cause of action, the elements of a claim alleging wrongful discharge in violation of public policy, generally, are described as: (1) the plaintiff was an at-will employee of the defendant; (2) the defendant terminated the plaintiff; (3) there was a public policy applicable to the circumstances of the termination; (4) the plaintiff was protected by this public policy; and (5) the defendant's motivation in terminating the plaintiff violated this public policy." Crespo v. Delta Apparel, Inc., No. 5:07CV65, 2008 WL 2986279, at *5 (W.D.N.C. July 31, 2008).

16

1383 (4th Cir. 1995).

Here, Plaintiff's wrongful termination claim in violation of the public policy expressed in the NCEEPA alleges that Defendant terminated Plaintiff after she engaged in protected activity by reporting injurious conduct that violated the NCEEPA. This claim fails because it is rooted in retaliation, which is not prohibited by the public policy of the NCEEPA. See Ramos, 2018 WL 3040028, at *11. Plaintiff also alleges she was terminated based on her sex in violation of the NCEEPA's public policy. Plaintiff testified that she thought she was terminated for making complaints against Ashley and "John Doe," and for submitting a complaint to OSHANC. (Def. Ex. D, at 117:21–118:2; 129:3–15). In other words, Plaintiff's position is that her termination was in retaliation for reporting Ashley and John Doe's alleged discriminatory conduct and reporting Amazon's alleged safety violations. Plaintiff's claim must fail because it is rooted in an alleged retaliatory action which is not prohibited by the NCEEPA. See Mullins, 994 F. Supp. at 688 ("[N]o North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices.").

Lastly, Plaintiff claims she was terminated based on a real or perceived disability in violation of the NCEEPA's public policy. "[W]hen faced with state law wrongful discharge on the basis of handicap/disability claims, courts utilize the evidentiary framework used in evaluating disability discrimination claims under the ADA." Nguyen v. Austin Quality Foods, Inc., 974 F. Supp. 2d 879, 898 (E.D.N.C. 2013) (quotations omitted). For Plaintiff's public policy claim to be successful, she must first prove a prima facia case of discrimination under the ADA. See id. at 886 ("The magistrate judge correctly determined plaintiff's wrongful discharge because of disability claim was without merit where plaintiff failed to establish a prima facie case."). As the Court has already discussed, however, Plaintiff has "failed to produce evidence to

17

suggest the termination occurred under circumstances giving rise to a reasonable inference of unlawful discrimination." Id. Moreover, Plaintiff has "failed to produce evidence that defendants' legitimate, non-discriminatory reason for termination is pretext." Id. Defendant is entitled to summary judgment on this claim.

> ii. **Public Policy Violation of REDA**.

Plaintiff also alleges Defendant violated the public policy set forth in REDA by discharging her after she filed an OSHANC complaint and a workers' compensation claim. "Both the Workers' Compensation Act and [REDA] are sources of policy establishing an employee's legally protected right of pursuing a workers' compensation claim." Nguyen, 974 F. Supp. 2d at 897 (E.D.N.C. 2013) (quoting Whitings v. Wolfson Casing Corp., 173 N.C. App. 218, 222 (2005)). "A plaintiff may pursue both a statutory claim under REDA and a common law wrongful discharge claim based on a violation of REDA." Id. Plaintiff has failed to establish a prima facie case under REDA. Even if she had, Defendant has presented a legitimate, non-retaliatory reason for terminating Plaintiffs employment, and no reasonable factfinder could conclude, based on the evidence presented, that the proffered reason was pretext, i.e., that Plaintiff's employment was in fact terminated for filing a workers' compensation claim. Nguyen, 974 F. Supp. 2d at 896–97; see also N.C. GEN. STAT. ANN. § 95-241(b) (establishing that REDA is not violated if employer "proves by the greater weight of the evidence that it would have taken the same unfavorable action in the absence of the protected activity of the employee"). Defendant is entitled to summary judgment as to this claim.

> iii. **Public Policy Violation under N.C. GEN. STAT. 95-126 et seq.**

Plaintiff alleges that Defendant violated the public policy set forth in N.C. GEN. STAT. § 95-126 et seq. by terminating Plaintiff after she engaged in protected activity by reporting

18

injurious conduct that violated OSHANC. Similar to REDA, "OSHA also prohibits retaliatory discharge against employees who report workplace safety violations or concerns." L. v. Gaston Cnty., No. 320CV398, 2021 WL 7185242, at *14 (W.D.N.C. Feb. 8, 2021), report and recommendation adopted in part sub nom. L. v. Gaston Cnty. Emergency Med. Servs., No. 320CV398, 2022 WL 18726 (W.D.N.C. Jan. 3, 2022). However, if an employer "has shown by the greater weight of the evidence that it would have terminated Plaintiff in the absence of the protected activity[]", the employee's claim fails. Id. (referencing the plaintiff's termination letter that provided employer's legitimate, non-retaliatory reason for terminating her employment); see also N.C. GEN. STAT. § 95-241(b). Defendant has provided sufficient evidence that Plaintiff's employment was terminated due to job abandonment. Defendant is entitled to summary judgment as to this claim.

## IV. CONCLUSION

For the reasons stated herein, Defendant is entitled to summary judgment as to all of Plaintiff's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 45), is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 65), is **DENIED**.

3. This action is dismissed with prejudice.

4. The Clerk is directed to terminate this action.

Signed: January 12, 2024

Max O. Cogburn Jr
United States District Judge